ORDERED.

Dated: **April 28, 2021**

Karen S. Jennemann
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | |
| William W. Cole, Jr., | Case No. 6:15-bk-06458-KSJ |
| Debtor. | Chapter 7 |
| | |
| William W. Cole, Jr., | |
| Plaintiff, | |
| vs. | Adversary No. 6:17-ap-0045-KSJ |
| Nancy A. Rossman and | |
| PRN Real Estate & Investments, Ltd., | |
| Defendants. | |

## MEMORANDUM OPINION GRANTING
## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

William W. Cole, Jr. ("Debtor" or "Plaintiff") claims his former business and romantic partner, defendant Nancy A. Rossman,[1] violated the automatic stay when she sent text messages and photos alleging extramarital trysts to his wife, daughter, and friends. Rossman and PRN (collectively, "Defendants") now seek summary judgment arguing the messages, even if sent by Rossman, were not intended to collect a debt and, therefore, do not violate the automatic stay.[2] I agree and will grant final summary judgment for Defendants.

In 2014, the business and personal relationship between Debtor and Rossman failed. Debtor breached a settlement with PRN and extensive litigation ensued.[3] On July 27, 2015, Debtor filed for Chapter 7 bankruptcy seeking to discharge his debts, including his substantial debt due to PRN and other creditors.[4]

This adversary proceeding is a small part of the spiderweb of litigation between these parties. Here, Debtor alleges that Defendants violated the automatic stay under § 362 of the Bankruptcy Code[5] by sending harassing communications intended to frustrate Debtor's personal and business relationships.[6] Debtor argues these messages

---

[1] Rossman's family company is the co-defendant, PRN Real Estate & Investments, Ltd. ("PRN"). Rossman Decl. ¶ 2, Doc. No. 156; Rossman Dep. 23:15-22, Doc. No. 159-1.
[2] Defs.' Mot. for Summ. J., Doc. No. 154. Debtor filed a Response in Opposition to Defendants' Motion for Summary Judgment. Doc. No. 157. Defendants filed a Reply in Support of Defendants' Motion for Summary Judgment. Doc. No. 162.
[3] The first lawsuit between the parties was filed on July 28, 2014. Defendants filed the action in Florida State Court and named Debtor, his wife, and one of his business entities, Cole of Orlando Limited Partnership, as defendants. Corrected First Am. Verified Compl. ¶ 39, Doc. No. 56. Other lawsuits followed. Corrected First Am. Verified Compl. ¶¶ 40-43, Doc. No. 56.
[4] Voluntary Pet. Under Chapter 7, *In re Cole*, No. 6:15-bk-06458-KSJ (Bankr. M.D. Fa. July 27, 2015), Doc. No. 1.
[5] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101, *et. seq.*
[6] *See* Corrected First Am. Verified Compl., Doc. No. 56.

were sent to indirectly induce him to pay the monies due to PRN.[7] Debtor requests actual and punitive damages against Defendants for "mental anguish, emotional distress, lost business opportunities, costs of investigation into fake email accounts and hacking into his . . . computers, and the cost to upgrade and secure his computer servers."[8]

Although Debtor's initial allegations were much broader,[9] now, the only challenged communications involve anonymous text messages allegedly sent by Rossman to Debtor's wife, daughter, and family friends, detailing Debtor's extramarital affair with Caryn Winter, his accountant.[10] These eight text messages included five messages sent to Terre Cole, Debtor's wife; one message to Alexis Cole, Debtor's daughter; and two messages to Debtor's friend and Caryn's husband, Dr. Robert Winter.[11] Debtor also alleges Rossman created a fake email address she used: (1) to forward Terre another romantic email Debtor allegedly had sent to another

---

[7] Corrected First Am. Verified Compl. ¶¶ 58-109, Doc. No. 56.
[8] Corrected First Am. Verified Compl. ¶ 116, Doc. No. 56.
[9] In his complaint, Debtor also refers to numerous other email and telephonic exchanges between Defendants, Debtor, and third parties relating to his on-going business and his bankruptcy filing. Debtor asserted these communications negatively affected his future business deals. Debtor, for example, claims Defendants' attorney called counsel for Deer Run Community Bonds to inform him that Debtor had filed for bankruptcy, causing him to lose negotiation leverage. Debtor also claims Defendants attempted to hack into his personal and business computers. On summary judgment, Defendants addressed these hacking claims and the third-party communications that originated from Defendants, more directly related to Debtor's business, and perhaps are more closely associated with PRN's efforts to collect a debt. Debtor, however, failed to address these matters in his response. Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Doc. No. 157. Accordingly, any arguments regarding these communications and the alleged hacking are considered abandoned. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim [in response to a motion for summary judgment], the Court deems such argument or claim abandoned.").
[10] Corrected First Am. Verified Compl. ¶¶ 61, 64, 73, 76, Doc. No. 56; Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 2, Doc. No. 157.
[11] Corrected First Am. Verified Compl. ¶¶ 61, 64, 73, 76, Doc. No. 56; Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 2., Doc. No. 157.

woman, Sherri Dyer, and (2) posing as the Debtor, to email a message about yet other romantic episodes to a referral source dating one of Debtor's business associates and friends.[12]

Every non-abandoned challenged message relates only to Debtor's extramarital romantic conduct; not one mentions PRN, Rossman, Debtor's business, or Debtor's unpaid debts. Yet, Debtor contends Rossman sent these messages not in a pique of anger over a failed romantic relationship but instead to indirectly pressure Debtor to pay PRN.[13] Debtor also contends Rossman was trying to break-up his marriage perhaps so his wife would divorce him, defeat their marital ownership of assets as tenants by the entireties, and increase the size of assets available for distribution to creditors.[14]

Defendants seek summary judgment. Federal Rule of Civil Procedure 56(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] The moving party has the burden of establishing the right to summary judgment.[16] "Facts are material if, under applicable law, they would

---

[12] Corrected First Am. Verified Compl. ¶¶ 66-67, 104-105, Doc. No. 56; Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 2-3, Doc. No. 157.
[13] Corrected First Am. Verified Compl. ¶¶ 58-109, Doc. No. 56.
[14] Corrected First Am. Verified Compl. ¶ 58, Doc. No. 56.
[15] Fed. R. Civ. P. 56(a).
[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).

affect the outcome of the suit."[17] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[18] Once the moving party has met its burden, the burden shifts to the nonmovant to show evidence raising a genuine issue of material fact for trial.[19] In determining summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[20]

In their motion for summary judgment, Defendants assert the unabandoned challenged communications about Debtor's romantic escapades show no stay violation. The automatic stay prevents a creditor from continuing to collect a debt against an individual who files a Chapter 7 bankruptcy case.[21] The stay gives debtors a "time out" as the Chapter 7 Trustee administers assets for *equal* distribution to similarly situated creditors.[22] It specifically prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy case]."[23] Section 362(k)(1) provides that an individual injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[24]

---

[17] *Welch v. Regions Bank (In re Mongelluzzi)*, 591 B.R. 480, 489 (Bankr. M.D. Fla. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)); *accord FindWhat Inv. Grp.*, 658 F.3d at 1307.
[18] *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *accord FindWhat Inv. Grp.*, 658 F.3d at 1307.
[19] *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017).
[20] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).
[21] *In re Robinson*, No. 11-bk-18517, 2012 WL 1658927, at *1 (Bankr. M.D. Fla. May 10, 2012); *In re White*, 410 B.R. 322, 324 (Bankr. M.D. Fla. 2009).
[22] *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 251 (5th Cir. 2006); *Winters v. George Mason Bank*, 94 F.3d 130, 135-36 (4th Cir. 1996).
[23] 11 U.S.C. § 362(a)(6).
[24] 11 U.S.C. § 362(k)(1).

A vigorously disputed fact is whether Rossman (or PRN) sent the anonymous text messages and allegedly fake emails. Defendants argue there is more evidence to support that Rossman did *not* send the text message than that she did.[25] Debtor, in contrast, points to certain statements made by Rossman during her deposition that show she had the opportunity and motive to send the text messages and emails.[26] A factual dispute exists. But even assuming Defendants sent these anonymous messages, Debtor still must show that a genuine issue of material fact exists as to whether the messages were sent to "collect, assess, or recover a claim" within the meaning of the Bankruptcy Code. On this point, Debtor has failed.

Debtor relies on decisions by courts finding stay violations where a creditor indirectly harasses and pressures a debtor to pay outstanding debts by communicating with non-debtor third parties.[27] Debtor is correct that indirect coercion may constitute a stay violation, but those third-party communications necessarily must be made "to harass or coerce a debtor and/or co-debtor into paying a pre-petition debt."[28] And although "[a] debtor is not always required to produce direct evidence of a creditor's intent to seize the debtor's funds in order to prove a [stay] violation," not every post-petition contact from, or communication by, a creditor is actionable under §

---

[25] Defs.' Mot. for Summ. J. 8-9, Doc. No. 154.
[26] Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 3-8, Doc. No. 157.
[27] Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 9-10, Doc. No. 157 (citing *Singley v. Am. Gen. Fin. (In re Singley)*, 233 B.R. 170 (Bankr. S.D. Ga. 1999); *Divane v. A & C Elec. Co.*, 193 B.R. 856, 859-60 (N.D. Ill. 1996); *In re Smith*, 185 B.R. 871, 873 (Bankr. M.D. Fla. 1994)).
[28] *In re Singley*, 233 B.R. at 173.

362(k)(1).[29] "Harassment does not violate the stay simply because it is directed toward a debtor by a creditor. A violation occurs only where the harassment is aimed at collecting a prepetition debt."[30] When harassing communication is so remote and disassociated from the collection of a prepetition debt, courts find no violation of the automatic stay.[31]

Here, none of the challenged texts and emails even hint at collecting a prepetition debt.[32] They were sent to Debtor's family and friends. They besmirch his reputation by claiming he engaged in numerous extramarital affairs. And, if Debtor is correct, the communications were sent by a spurned romantic partner.

No reader would conclude the communications were an indirect coercion to get Debtor to pay PRN. So, assuming Defendants sent the emails and anonymous text messages, no genuine dispute of material fact exists whether the messages were intended to make Debtor pay PRN. They were not so intended and constitute no stay violation.

Defendants' alleged actions are "not inexplicable absent a motivation to collect."[33] The messages, at best, evidence the rancor and deterioration of the personal

---

[29] *Protos v. Silver (In re Protos)*, No. 02-74770, 2005 WL 6491916, at *2-3 (Bankr. N.D. Ga. Jan. 28, 2005); *accord Turnbow v. Blundy (In re Blundy)*, No. 10-83658, 2012 WL 4506663, at *10 (Bankr. C.D. Ill. Sept. 28, 2012); *In re Mercier*, 328 B.R. 590 (Bankr. M.D. Fla. 2005).
[30] *In re Blundy*, 2012 WL 4506663, at *10 (citing *In re Protos*, 2005 WL 6491916; *In re Mercier*, 328 B.R. 590).
[31] *Thors v. Allen*, No. 16-2224, 2016 WL 7326076, at *10 (D.N.J. Dec. 16, 2016); *In re Protos*, 2005 WL 6491916, at *2.
[32] *See In re Protos*, 2005 WL 6491916, at *2-3; *In re Blundy*, 2012 WL 4506663, at *10; *In re Mercier*, 328 B.R. at 591.
[33] *See In re Protos*, 2005 WL 6491916, at *3.

relationship between Rossman and Debtor.[34] The connection between the personal communications about Debtor's romantic exploits and the debt due to PRN is simply too attenuated to show any violation of the automatic stay. The inference that the messages are related to impermissibly collecting a debt is "too weak."[35]

The Court finds, as a matter of law, the challenged messages were not made to "collect, assess, or recover a claim against the debtor." [36] Defendants have not violated the automatic stay imposed by § 362(a). Defendants' motion for final summary judgment is granted.

A separate Final Judgment consistent with this Memorandum Opinion shall issue.

### ###

Attorney James A. Timko will serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

---

[34] *Thors*, 2016 WL 7326076, at *10.
[35] *See id.*; *In re Protos*, 2005 WL 6491916, at *2.
[36] *See* 11 U.S.C. § 362(a)(6).